**COLUMBIA BRICK WORKS, INC.,**
**Plaintiff-Appellee,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant.**

No. 84–4125.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 6, 1985.

Decided Aug. 13, 1985.

Michael E. Haglund, Lindsay, Hart, Neil & Weigler, Portland, Or., for plaintiff-appellee.

Gordon W. Moss, C. Val Tollefson, Lane, Powell, Moss & Miller, Seattle, Wash., for defendant-appellant.

---

\* Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

Before WALLACE and SNEED, Circuit Judges, and LEGGE \*, District Judge.

SNEED, Circuit Judge:

Defendant Royal Insurance Company of America (Royal) appeals an award of prejudgment interest to plaintiff Columbia Brick Works, Inc. (Columbia) on a marine cargo insurance claim. Although this case involves admiralty law, jurisdiction in the district court was based on diversity under 28 U.S.C. § 1332 (1982). We have jurisdiction over Royal's timely appeal under 28 U.S.C. § 1291 (1982). We affirm the judgment of the district court.

## I.

### FACTS

Columbia owns and operates a brick manufacturing plant in Gresham, Oregon. In 1980, Columbia contracted to purchase new brickmaking equipment from a Spanish manufacturer. Columbia received the shipments from Barcelona, Spain between 1980 and 1981. The equipment was insured against transit damage by Royal under an all-risk marine insurance policy. When the cargo arrived in Oregon, Columbia discovered that the equipment in eight of ten shipments had sustained damage from rust. Royal acknowledged liability under the insurance policy, but the parties disagreed about the amount owed by Royal.

Columbia brought this diversity action to determine the amount owed. At trial, the jury heard expert testimony about the diminution in value of the damaged equipment because of its reduced life expectancy and the probable need for future maintenance and repair.

The parties stipulated that the undamaged value of the eight shipments was $1,622,632. The district judge instructed

the jury to measure the damages by taking the difference between the stipulated value and the market value of the goods in their damaged condition. The figure obtained would represent the diminution in value of the equipment resulting from the damage. Based on this instruction, the jury awarded Columbia $850,000.

After judgment on the verdict, Columbia moved for prejudgment interest on the award from the date of the delivery of the damaged equipment. The district judge awarded prejudgment interest on $850,000 from the time of delivery at a rate of 12.801 percent. This was the rate paid on fifty-two week treasury bills on the date of delivery, March 24, 1981. Royal's timely appeal followed.

## II.

## DISCUSSION

Royal raises two objections to the district court's grant of prejudgment interest. First, Royal argues that the district court abused its discretion by awarding Columbia prejudgment interest on the entire jury award from the date of delivery. Second, Royal challenges the district court's determination of the rate of such interest on the ground that Oregon state law, not federal law, fixes its rate. We will address these contentions in turn.

### A. Standard of Review

 In admiralty law, the district court has discretion to award prejudgment interest to accomplish the just restitution of injured parties. *Alkmeon Naviera, S.A. v. M/V Marina L.*, 633 F.2d 789, 797 (9th Cir.1980). The district court also has broad discretion to determine when prejudgment interest commences and what rate of interest to apply. *Independent Bulk Transport, Inc. v. The Vessel Morania Abaco*, 676 F.2d 23, 25 (2d Cir.1982). We therefore review the grant of prejudgment interest for abuse of discretion.

### B. Prejudgment Interest

#### 1. Should Prejudgment Interest Be Computed on the Basis of the Entire Jury Award?

 Discretion is abused if, as Royal argues here, prejudgment interest amounts to a penalty rather than compensation. *See Stevens v. F/V Bonnie Doon*, 655 F.2d 206, 209 (9th Cir.1981) (*Bonnie Doon I*); *Alkmeon Naviera*, 633 F.2d at 797–98. This principle prohibits an award of prejudgment interest that either duplicates an item of compensation already awarded or compensates for a loss either that never will be suffered or that has not been suffered prior to judgment. Thus, prejudgment interest is not allowable when compensation for losses that occurred prior to judgment already has been computed by a method that includes interest at a proper rate from the date of the injury. *See Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1437–38 (9th Cir.1984) (*Bonnie Doon II*). Nor is prejudgment interest allowable with respect to losses that will accrue subsequent to judgment. *See Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955–56 nn. 3, 4 (5th Cir.1984).

Royal concedes that under admiralty law Columbia has a right to receive prejudgment interest on a jury award. The question here, however, is whether prejudgment interest is barred by either of the above rules. If so, the district court abused its discretion in granting prejudgment interest on the jury award of $850,000. We hold, however, that prejudgment interest was proper.

 To reach this conclusion, we first turn to the proper measure of damages for injury to cargo carried at sea. In general, that measure is "the difference between the sound market value at the port of destination and the market value of the goods in their damaged condition." Wood, *Damages in Cargo Cases*, 45 Tul.L.Rev. 932, 932 (1971). *Cf. Daido Line v. Thomas P. Gonzalez Corp.*, 299 F.2d 669, 676 (9th Cir.1962) ("The calculation of damages begins with the fair market value of the

product at the time and place of intended arrival in the condition in which it would have arrived save for the carrier's negligence." (footnote omitted)). When market price reflects an inaccurate measure of the loss suffered, however, the court may resort to other indicators to determine the value of the damaged goods. *Illinois Central Railroad v. Crail*, 281 U.S. 57, 64–65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930); *see generally* Wood, *supra*, at 933–36 (deviations from general market-value rule used to achieve just compensation). Rigid adherence to a uniform formula for measuring damages is not necessary so long as the instruction clearly conveys that the injured party may only receive just compensation for the diminution in value of the goods. *See Illinois Central Railroad*, 281 U.S. at 64–65, 50 S.Ct. at 181.

In this case, the jury was charged to measure the damages by determining the diminution in the equipment's value as of the date of delivery. The court did not instruct the jury, as Royal asserts, to award damages equal to repair costs and lost profits. Repair costs and lost profits were relevant only as guides in determining the diminution in value. The district court expressly instructed the jury:

> Columbia Brick is entitled to the amount of money calculated by taking the value of undamaged equipment, which is $1,622,632, less the value of damaged equipment to Columbia Brick at the time of the delivery.
>
> Among the evidence that may be considered is the cost of repairs, cost of future repairs, potential lost profits, and evidence of reduced market value of the equipment.
>
> You should determine the value of damaged equipment to Columbia Brick by weighing all the evidence presented in this case.

Reporter's Transcript at 388. The jury's consideration of these multiple criteria was necessary because, as Royal admits, "the equipment had no market in the United States and had value only to Columbia." Appellant's Opening Brief at 10–11. Royal

recognized that the damaged equipment was not an item heretofore bought and sold in the United States.

Indeed, if we view the instruction in the context of the district judge's entire jury charge, its goal becomes clear. Prior to the portion of the instruction quoted above, the district judge stated to the jury:

> The amount of damages to be awarded to the plaintiff must be an amount which will *fully and fairly compensate* Columbia Brick for the amount it lost as a result of the damage in transit to the equipment; *no more nor no less.*
>
> In other words, the amount of damages to be awarded plaintiff should place it in the same position financially as it would have been had the equipment not been damaged.

Reporter's Transcript at 387–88 (emphasis added). This instruction concurs with the reasoning adopted in other maritime cases. *See Bonnie Doon II*, 731 F.2d at 1436. The jury instruction simply provides a guide to ensure that Columbia receives full compensation for its loss.

██ The jury award under these instructions constitutes a determination of the equipment's loss of value to Columbia as of the time of delivery. The injury occurred as of that time. From that date to the date of judgment Columbia was deprived of the earning power of that sum. Prejudgment interest compensates for that loss. Postjudgment interest compensates for its loss from the date of judgment to the date of payment. The allowance of prejudgment interest in this case makes whole the injured party. *See Independent Bulk Transport*, 676 F.2d at 27 n. 1. Allowance of such interest, to repeat, is the usual and ordinary method of making full restitution to the party injured in a maritime setting. *The President Madison*, 91 F.2d 835, 845–46 (9th Cir.1937).

### 2. *Prejudgment Interest From the Date of Delivery*

██ Royal next argues that prejudgment interest may be awarded only from the time Columbia actually paid repair and re-

placement expenses and not from the date of delivery. We disagree.[1]

Royal's argument is difficult to understand. Presumably it invokes one or both of the rules barring prejudgment interest stated above. That neither is applicable easily can be demonstrated. Had Columbia received the damaged equipment *and* the $850,000 at the date of delivery no prejudgment interest would have been allowable. To allow it would duplicate the interest the $850,000 would earn for Columbia. The $850,000 was not received on the date of delivery although it is the monetary equivalent of precisely what Columbia was entitled to receive. The allowance of prejudgment interest thus is necessary to fully compensate for Columbia's loss.

Nor does such interest compensate for an injury not yet suffered. Had the jury been instructed to award Columbia its expected repair and replacement costs and its lost profits, then prejudgment interest would not be appropriate for those costs that had not yet been incurred and those profits that had not yet been expected to accrue as of the date of judgment. But the jury was instructed to award Columbia damages equal to the diminution in value of the brickmaking equipment as · of the date of delivery. Repair and replacement cost and expectations of lost profits were merely evidence of such diminution. We must presume, therefore, that to the extent that the amount of the verdict depended on evidence of expected costs and lost profits,

the jury discounted such costs and lost profits to their present value at the date of delivery. Prejudgment interest must then be added to the judgment in order to reflect the value of Columbia's loss as of the date of judgment. We have unequivocally stated that:

> The measure of damages recoverable from a carrier for damage to cargo through its fault is the difference between the market value of the cargo at the time and place of ·delivery in the condition in which it would have arrived but for the carrier's fault and its market value in the condition in which by reason of such fault it did arrive, *with interest from the time of delivery.*

*United Steamship Co. v. Haskins,* 181 F. 962, 965 (9th Cir.1910) (emphasis added). We therefore hold that the award of prejudgment interest from the date of delivery accomplished the just restitution of Columbia for its loss.

### C. *The Appropriate Rate of Prejudgment Interest*

Royal also argues that the district court applied the wrong interest rate. Royal claims that since Columbia brought its suit under the district court's diversity jurisdiction, the rate of prejudgment interest is limited to Oregon's statutory rate of nine percent. *See* Or.Rev.Stat. § 82.010(2)(a) (1983). Columbia maintains that because the suit involved maritime issues, federal law should apply. We agree.[2]

---

**1.** The cases cited by Royal as awarding interest from the date of payment for repairs or replacement do not demonstrate that Columbia is overcompensated by the award of interest from the date of delivery. Most of the cases cited by Royal are collision cases in which the cost of repair or replacement is the measure of damages used in calculating the award. *See, e.g., Bonnie Doon I,* 655 F.2d 206, and *Bonnie Doon II,* 731 F.2d 1433 (repair costs for damage caused by collision between ships); *Western Pacific Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280 (9th Cir.1984) (costs for damages from collision of ships). Of the three cargo damage cases cited by Royal, two state that prejudgment interest will be awarded to the *vessel owners* from the date on which the owners made payment to the cargo owners under the vessel owners' liability as carriers. *See Mid-*

*America Transportation Co., Inc. v. Rose Barge Lines, Inc.,* 477 F.2d 914, 916 (8th Cir.1973); *Consolidated Grain & Barge Co. v. Flowers Transportation, Inc.,* 538 F.Supp. 65, 74 (E.D. Mo.1982). In the third case, *United States Smelting, Refining & Mining Co. v. Waterman S.S. Corp.,* 62 F.Supp. 511, 520 (E.D.La.1945), the court awarded prejudgment interest from the date payment was made by the cargo owner to replace pieces of structural steel lost overboard during shipment. Only this case supports Royal's position.

**2.** We note in passing that Royal did not present this precise argument in district court. Generally, an appellant may not appeal an issue that it did not contest below. *See Rothman v. Hospital Service of Southern California,* 510 F.2d 956, 959–60 (9th Cir.1975); *Roberson v. United*

In diversity cases, admiralty issues are generally covered by maritime law. *See Kossick v. United Fruit Co.*, 365 U.S. 731, 734, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410–11 & n. 4, 74 S.Ct. 202, 205–06 & n. 4, 98 L.Ed. 143 (1953). In cases tried under admiralty principles only, principles of federal law govern a plaintiff's entitlement to prejudgment interest even though the plaintiff may have invoked diversity jurisdiction in his complaint. *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955 (5th Cir.1984). However, state law will control issues related to maritime insurance policies "in the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice." *Bohemia, Inc. v. Home Insurance Co.*, 725 F.2d 506, 510 (9th Cir. 1984).

Royal contends that the Oregon rate should govern because there is no judicially-fashioned admiralty rule and no need for uniformity in admiralty practice regarding the rate of prejudgment interest. On the contrary, there is a judicially-fashioned admiralty rule governing the rate of prejudgment interest. In 1982, Congress amended 28 U.S.C. § 1961 to provide that district courts must set the interest accrued after civil judgment by reference to fifty-two week U.S. Treasury bill rates.[3] We have determined that the measure of interest rates prescribed for postjudgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different rate. *See Western Pacific Fisheries, Inc. v. SS President Grant*, 730 F.2d 1280, 1289 (9th Cir.1984).

By awarding interest at 12.801 percent, the fifty-two week Treasury bill rate on the date of delivery, the district court applied this judicially-fashioned admiralty rule. *See Western Pacific Fisheries*, 730 F.2d at 1289; *Bonnie Doon II*, 731 F.2d at 1437.

Although we recognize that a court may choose the local rate of interest in its discretion if the equities demand, *see Western Pacific Fisheries*, 730 F.2d at 1289; *The President Madison*, 91 F.2d at 847, we decline to compel the district court to apply Oregon's lower statutory rate of interest. *Cf. Sea-Land Service, Inc. v. Eagle Terminal Tankers, Inc.*, 443 F.Supp. 532, 534 (W.D.Wash.1977) (award of interest at state rate that is less than money market rate denies full restitution). The rate of interest awarded Columbia, 12.801 percent, fairly compensates Columbia for its loss.

For the reasons set forth above, we affirm the district court's order.

AFFIRMED.

WALLACE, Circuit Judge, concurring:

I concur with all but part II.C. of the majority opinion. I would not reach the question of whether federal or state law applied to determine the prejudgment interest rate, because Royal did not raise this issue in the district court.

---

*States*, 382 F.2d 714, 718 (9th Cir.1967). But Royal did argue below that the district court should apply the average treasury bill rate during the period prior to judgment, not the fifty-two week treasury bill rate on the day of delivery. Moreover, Royal cites cases that support the contention that a court of appeal *may* consider a choice of law issue not raised in the trial court. *See Schultz v. Tecumseh Products*, 310 F.2d 426, 433 (6th Cir.1962); *Parkway Baking Co. v. Freihofer Baking Co.*, 255 F.2d 641, 646 (3d Cir.1958).

3. Section 1961(a) provides in relevant part:
 Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.
 28 U.S.C. § 1961(a) (1982).